**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

SOYNER UMANZOR,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

No. C 11-4024- MWB
(No. CR 8-4042- MWB)

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S SECTION 2255
MOTION**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 *A. The Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 *B. The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
 *A. Standards For § 2255 Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
 *B. Procedural Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  *1. Need for an evidentiary hearing* . . . . . . . . . . . . . . . . . . . . 8
  *2. Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 *C. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . 10
  *1. Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  *2. Advising the petitioner to plead guilty to the charged drug
   quantity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  *3. Failure to move to withdraw guilty plea* . . . . . . . . . . . . . . 20
  *4. Ineffectiveness on appeal* . . . . . . . . . . . . . . . . . . . . . . . 22

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# I.  INTRODUCTION

This case is before me on petitioner Soyner Umanzor's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody and Memorandum Brief (Civ. docket no. 1), filed on March 7, 2011.  Umanzor claims that the attorney who represented him at the trial level and on appeal, provided him with ineffective assistance of counsel in several ways.  The respondent denies that Umanzor is entitled to any relief on his claims.

## A.  The Criminal Proceedings

On June 26, 2008, Umanzor was charged in counts one, two, four, six and eight of a seventeen-count second superseding indictment (Crim. docket no. 14).  Count one of the second superseding indictment charged Umanzor with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, which contained 50 grams or more of actual methamphetamine.  *See* Crim. docket no 14.  Count two of the second superseding indictment charged Umanzor with distribution and aiding and abetting distribution of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, which contained 5 grams or more of actual methamphetamine, within 1,000 feet of a school on or about December 20, 2007.  *See* Crim. docket no. 14.  Count four of the second superseding indictment charged Umanzor with distribution and aiding and abetting the distribution of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine,

which contained 5 grams or more of actual methamphetamine, on or about January 4, 2008. *See* Crim. docket no. 14. Count six of the second superseding indictment charged Umanzor with distribution and aiding and abetting distribution of 50 grams or more of a mixture or substance, which contained 5 grams or more of actual methamphetamine, within 1,000 feet of a school, on or about January 24, 2008. *See* Crim. docket no. 14. Count eight of the second superseding indictment charged Umanzor with distribution and aiding and abetting distribution of 5 grams or more of actual methamphetamine on or about January 24, 2008. *See* Crim. docket no. 14. On July 31, 2008, the prosecution filed a third superseding indictment (Crim. docket no 24), removing Umanzor from count six and instead adding him to count nine, thereby charging him with distribution and aiding and abetting the distribution of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, which contained 5 grams or more of actual methamphetamine, within 1,000 feet of a school on or about February 20, 2008. *See* Crim. docket no. 24. The other counts against Umanzor remained unchanged. Umanzor appeared in front of Chief United States Magistrate Judge Paul A. Zoss on October 21, 2008, to plead not guilty to all counts of the third superseding indictment in which he was named. *See* Crim. docket no. 38.

Umanzor appeared before me on March 13, 2009, to plead guilty to counts one, two, four, eight, and nine of the third superseding indictment. *See* Crim. docket no. 80. Umanzor appeared before me on July 9, 2009, for a sentencing hearing. *See* Crim. docket no. 104. Although I had serious concerns about imposing the mandatory minimum sentence, because there were questions about whether Umanzor was actually responsible for the 50 grams of actual methamphetamine to which Umanzor had pleaded guilty, I felt bound by the prior plea of guilty to that amount. *See* Sent. Trans. at 28-30; 34. I imposed the 120-month mandatory minimum sentence on each count, to run concurrently, after

finding a total offense level of 29, a criminal history category of 2, an advisory guideline range of 97 to 121 months, and independently considering the 18 U.S.C. §3553(a) sentencing factors. Sent. Trans. at 37. Additionally, I determined that Umanzor was not safety-valve eligible because of his criminal history points and because the conviction involved conduct at a protected location. Sent. Trans. at 37. During the sentencing hearing, I noted that if I had not been required to impose the mandatory minimum, I would have done a downward variance of some sort. Sent. Trans. at 38.

Umanzor filed a Notice of Appeal (Crim. docket no. 110) to the United States Court of Appeals for the Eighth Circuit on July 17, 2009. On appeal, Umanzor argued that he did not make his plea knowingly and voluntarily because there was no factual basis for his plea and that he should have been allowed to argue for a lower drug quantity at sentencing than he had pleaded guilty to. *See* Crim. docket no. 137, at 2. On August 24, 2010, the United States Court of Appeals for the Eighth Circuit entered an Opinion (Crim. docket no. 137). The appellate court held that Umanzor could not challenge the voluntariness of his plea for the first time on appeal. *See* Crim. docket no. 137, at 13. The appellate court also determined that the facts relating to drug quantity alleged in the third superseding indictment and admitted to in the plea hearing established a "floor" for sentencing purposes. *See* Crim. docket no. 137, at 16. The court affirmed the judgment and sentence. *See* Crim. docket no. 137, at 18.

### B. The § 2255 Motion

On March 7, 2011, Umanzor filed this *Pro Se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1) ("Motion"). By Order (Civ. docket no. 4), an attorney was appointed to represent Umanzor with regard to his Motion. On May 25, 2011, Umanzor's counsel filed

"Petitioner's Notice Regarding Supplemental Briefing" (Civ. docket no. 11), indicating that Umanzor would "stand on the original brief filed with the Petition." On July 8, 2011, the respondent filed a Response And Memorandum In Support Of Government's Response To Defendant's Motion Under 28 U.S.C. § 2255. (Civ. docket no. 14).

## II. LEGAL ANALYSIS

### A. Standards For § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting

*Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003).

6

Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, I turn to analysis of Umanzor's claims for § 2255 relief.

## B. Procedural Matters

### 1. Need for an evidentiary hearing

A district court may grant § 2255 relief without holding an evidentiary hearing where there is no disputed question of fact and the files and records of the case establish conclusively that the petitioner is entitled to relief. *See Grady v. United States*, 269 F.3d 913, 918 (8th Cir. 2001) (applying the same standard for denial of § 2255 relief without an evidentiary hearing to the question of whether to grant § 2255 relief without a hearing). I find, for reasons discussed below, that the files and records in this case make it clear, without need for a hearing to resolve any outstanding factual disputes, that the petitioner is entitled to relief.

The Eighth Circuit Court of Appeals proposed that there were two possible interpretations regarding what Umanzor's motives were for pleading guilty: one, that Umanzor knew that he had been involved with the sale of more than 50 grams or more of actual methamphetamine and intended to plead guilty to the full amount that he had been involved with; and, two, that Umanzor only knew of the four transactions appearing separately in the indictment. *See United States v. Umanzor*, 617 F.3d 1053, 1060-61 (8th Cir. 2010). The Court indicated that this was a factual dispute that would keep it from ruling directly on Umanzor's claim of ineffective assistance. *Id.* However, I find that, even if Umanzor had known that he was personally involved with the sale of 50 grams or more of actual methamphetamine, his counsel provided ineffective assistance of counsel, as discussed below, based on the amount that the government could prove he was responsible for, which the record indicates was information counsel was fully aware of, or should have been aware of, prior to trial. Umanzor's counsel had reviewed the government's discovery material and had discussed with Umanzor the fact that the sentencing court "might not be receptive to my arguments regarding drug amounts. . . ."

Response, Affidavit at 4. It is undisputed that Umanzor's counsel knew or should have known that the government could not prove Umanzor's direct involvement with 50 grams or more of pure methamphetamine; it is undisputed that Umanzor's counsel knew this prior to the plea hearing, but advised Umanzor to plead guilty anyway on the basis that he believed that he could argue at sentencing for a drug quantity lower than 50 grams of pure methamphetamine.

There are no unresolved factual disputes that are relevant to this proceeding. I find that, based on this record, an evidentiary hearing is not necessary.

## 2. *Procedural default*

Claims are procedurally defaulted if not raised at trial or on direct appeal. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) ("Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice." (internal citations omitted)); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'" (quoting *Bousley*, 523 U.S. at 622, with citations omitted)). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Where possible, I have

construed the petitioner's claims as claims of ineffective assistance of counsel and, therefore, will consider them on the merits.

## C. *Ineffective Assistance Of Counsel*

### 1. *Applicable standards*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466

U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

As to the deficient performance prong, "The Court acknowledged [in *Strickland*] that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 689). Moreover,

> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," [*Strickland*, 466 U.S. at 689], the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.,* at 690, 104 S. Ct. 2052. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.,* at 688, 104 S. Ct. 2052. The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.,* at 690, 104 S. Ct. 2052.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. To put it another way,

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688, 104 S. Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687, 104 S. Ct. 2052.

*Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011); *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (quoting *Richter*). There are two substantial impediments to making the required showing. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). Also, the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'" *King*, 595 F.3d at 852-53 (quoting *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996), in turn quoting *Strickland*, 466 U.S. at 690).

The second prong of the *Strickland* analysis requires the challenger to prove prejudice. *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (citing *Strickland*, 466 U.S. at 691-92). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691). As the Supreme Court has explained,

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland*, 466 U.S.] at 694, 104 S. Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. Even where the petitioner "suffered prejudice from his lawyer's error," he is not entitled to § 2255 relief unless the lawyer's error was also the result of conduct that was professionally unreasonable at the time. *King*, 595 F.3d at 852-53.

The two prongs of the "ineffective assistance" analysis are usually described as sequential. Thus, if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003). On the other hand, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).").

## 2. *Advising the petitioner to plead guilty to the charged drug quantity*

Umanzor argues that his trial counsel was "ineffective for advising [him] to ple[a] guilty to a quantity as charged, but [that] was higher than the amount found by the lab or

probation." Motion at 4. Umanzor specifically admitted, at his plea hearing, to assisting with the distribution of a methamphetamine mixture that contained more than 50 grams of actual methamphetamine. Plea Hrg. Trans. at 16. Further, Umanzor pleaded guilty to an offense involving a specific quantity of drugs greater than that supported by the laboratory results. PSIR, at Para 38.

Respondent claims that even if Umanzor's trial counsel was ineffective for advising Umanzor to plead guilty to a drug quantity higher than the quantity the lab reports indicated had been involved in the four controlled buys during which Umanzor was present, Umanzor was not prejudiced by his counsel's actions because Umanzor was ultimately responsible for distribution of 50 grams or more of pure methamphetamine. Response at 8. Respondent argues, relying on *Pinkerton*, that "the drug quantity referred to in paragraph 34 of the Presentence Investigation Report ("PSIR") [110.96 grams of methamphetamine mixture which contained 18.86 grams of pure methamphetamine involved in an additional controlled buy from Umanzor's co-conspirator] would have brought [Umanzor's] drug amount up to the 50 grams necessary for the ten year mandatory minimum." Response at 8.

The PSIR filed on July 2, 2009, indicated that Umanzor was responsible for distribution of 6.85 grams of actual methamphetamine on December 20, 2007 (the transaction at issue in Count Two); for distribution of 10.13 grams of actual methamphetamine on January 4, 2008 (the transaction at issue in Count Four); for distribution of 5.75 grams of actual methamphetamine on January 24, 2008 (the transaction at issue in Count Eight); and for distribution of 9.74 grams of actual methamphetamine on February 20, 2008 (the transaction at issue in Count Nine). PSIR at 9-10. The quantity of drugs that the PSIR proposed holding Umanzor accountable for totaled 32.47 grams of actual methamphetamine (the total of the "pure" or "actual" methamphetamine involved

in the four controlled buys specifically enumerated in separate counts of the third superseding indictment), while Umanzor had previously pleaded guilty to distributing at least 50 grams of actual methamphetamine. PSIR at 12. The PSIR identifies a fifth controlled buy, allegedly pursuant to the conspiracy, but at which Umanzor was not present:

> On April 22, 2008, the undercover agent contacted [Umanzor's co-conspirator], and arranged to purchase four ounces of methamphetamine for $4,800. The two met in Denison, Iowa. [Umanzor's co-conspirator] sold the undercover agent 110.96 grams of methamphetamine. Lab reports indicate the methamphetamine was 17% pure. After the transaction, [Umanzor's co-conspirator] was arrested and transported to jail.

PSIR at Para. 34. The PSIR did not attribute the quantity involved in this transaction to Umanzor.

At his plea hearing, Umanzor was asked specifically whether he agreed that ". . . in this conspiracy you assisted [the co-conspirator] in the distribution of more than 500 grams of methamphetamine mixture which contained more than 50 grams of actual pure methamphetamine?" Umanzor responded in the affirmative. Plea Hrg. Trans. at 16. Later, at Umanzor's sentencing hearing, when it became obvious that the lab reports indicated that a lower amount of methamphetamine had been involved in the four controlled buys at which Umanzor was present, Umanzor's counsel indicated that he had been aware of that fact when he advised Umanzor to plead guilty, but that he thought he could plead Umanzor guilty to 50 grams or more and still argue at sentencing that Umanzor was responsible for less than 50 grams. Sent. Trans. at 5 and 28. Umanzor's counsel stated "that under 'relevant conduct' Umanzor could only be liable for less than 50 grams even if Umanzor had already pleaded guilty to 50 grams or more." Sent. Trans.

at 5. In its ruling on Umanzor's direct appeal, the Eighth Circuit Court of Appeals stated that Umanzor's counsel, who had also represented Umanzor at trial, cited no authority, nor could it identify any, for this proposition. *See United States v. Umanzor*, 617 F.3d 1053, 1062 (8th Cir. 2010).

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) (citing *McMann v. Richardson*, 397 U.S. 759, 771.)) While "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690), the record indicates that Umanzor's counsel failed to make a thorough investigation of the law to support what he claimed to be a strategic decision. I cannot find that the conduct of Umanzor's counsel "fell within the wide range of reasonable or professional assistance." *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005). Umanzor's trial counsel provided deficient performance when he advised Umanzor to plead guilty to a larger quantity of drugs than was found in the lab reports on the theory that Umanzor could later argue, at sentencing, that under relevant conduct, he was responsible for a smaller amount of drugs than he had pleaded guilty to, thus subjecting Umanzor to application of a statutory mandatory minimum sentence of ten years.

However, "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691). Umanzor must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That requires a "substantial," not just "conceivable,"

likelihood of a different result. *Richter*, 562 U.S., at ––––, 131 S. Ct., at 791. "In the guilty plea context, the convicted defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Matthews v. United States*, 114 F.3d 112, 114, (8th Cir. 1997) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), and *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)).

The question here, then, is essentially whether Umanzor could reasonably have believed that it would have been to his benefit to go to trial as opposed to pleading guilty. *Id*. As the Eighth Circuit Court of Appeals stated with regard to the evidence in this case, "The physical evidence does not prove the quantity as set forth in the admission. . . ." *Umanzor*, 617 F.3d at 1063. There is no evidence, on the record before me, that would support a finding that more than 50 grams of pure methamphetamine was involved in the four controlled buys for which Umanzor was present. On the record before me, Umanzor's role, even in those four controlled buys, was, arguably, minimal. Umanzor's statements identified in the PSIR, that he received no benefit in the form of drugs or money, have not been challenged or refuted by the respondent. PSIR, at 9-10. There is no evidence that Umanzor had any contact with individuals wishing to purchase drugs. There is no evidence that Umanzor had any prior involvement with the sale or purchase of drugs. In totality, the evidence in the record may have provided a strong "mere presence" defense for Umanzor, even as related to the four controlled buys for which he was present. *See United States v. Gonzales*, 90 F.3d 1363, 1371 (8th Cir. 1996) (a defendant is entitled to a mere presence instruction if there is evidence to support lack of intent and knowledge of criminal activity).

In order to establish Umanzor's guilt for a charge that would have subjected him to a mandatory minimum ten-year sentence, a jury would have had to conclude that

Umanzor was not only responsible for the quantity of drugs involved in the four controlled buys for which he was present, but was also responsible for the quantity of drugs involved in the fifth controlled buy that occurred in April of 2008, even though he was not physically present for that sale and there is no evidence that he had any other involvement with it.

"[W]hen sufficient evidence exists to establish a conspiracy and the defendant's membership in the conspiracy, the defendant may be found guilty of a substantive crime committed by co-conspirators in furtherance of the conspiracy, even though the defendant did not participate in the substantive crime." *United States v. Johnson*, 906 F.2d 1285, 1289 (8th Cir. 1990) (citing *Pinkerton v. United States*, 328 U.S. 640 (1946)). A defendant is responsible for the quantity of drugs involved in a conspiracy when that quantity is reasonably foreseeable to the defendant, and a defendant's role in the conspiracy is relevant for determining what should be foreseeable to the defendant. *United states v. Ramon-Rodriquez*, 492 F.3d 930, 942 (8th Cir. 2007). "'Factors relevant to foreseeability include whether the defendant benefit[t]ed from his co-conspirator's activities and whether he demonstrated a substantial level of commitment to the conspiracy.'" *United States v. Williams*, 605 F.3d 556, 569 (8th Cir. 2010) (quoting *United States v. Brown*, 148 F.3d 1003, 1008 (8th Cir. 1998)).

In evaluating whether Umanzor benefitted from his co-conspirator's activities and whether he demonstrated a substantial level of commitment to the conspiracy, the record indicates that he received no benefit from his activities and provides a strong factual argument that he did not demonstrate a substantial level of commitment to the conspiracy. With regard to the first controlled buy that Umanzor was present for, the record indicates that his involvement was limited to driving his co-conspirator to the location where the sale was to occur. PSIR Para. 28. With regard to the second controlled buy, Umanzor

appeared at the location of the sale and handed his co-conspirator a baggie of methamphetamine. PSIR Para. 29. For the third controlled buy that Umanzor was present for, the evidence indicates that Umanzor rode along in a car to the site of the sale, but exited the vehicle to go into a restaurant while the sale occurred. PSIR Para. 31. The evidence indicates that Umanzor's involvement with the fourth controlled buy was limited to showing up at the site of the sale with a package of methamphetamine after being called and told to "grab the stuff from under the couch and bring it. . . ." PSIR Para. 32. The record indicates that Umanzor received no benefit of any kind from his involvement in these transactions. PSIR at 8-11.

There is no indication that, at anytime, Umanzor knew any of the buyers, knew how many buyers there were, had anything to do with the pricing of the drugs, knew where the drugs were coming from, had anything to do with the procurement of the drugs, or the storage or preparation of the drugs for sale, received any compensation of any sort for any involvement, or had any reason to know that his co-conspirator would continue to sell drugs in the future, or had been in the past. There is no evidence in the record to indicate that Umanzor was personally involved in any activity associated with his co-conspirator or a drug conspiracy at any point after February of 2008.

Based on the lack of strength of the evidence to support the argument that it would have been reasonably foreseeable to Umanzor that his co-conspirator would have engaged in another drug sale in April of 2008, it seems reasonably probable that Umanzor would have decided to go to trial, rather than plead guilty, if he had not received inadequate advice from his attorney regarding what his sentencing options were. In addition to the significant likelihood that a jury would have found that Umanzor was only guilty of a lesser-included conspiracy involving a drug quantity below the 50 grams, which would have removed the ten-year mandatory minimum sentence, it is also possible that Umanzor

had a persuasive mere presence defense to present at trial, and a good argument for a downward variance based on minimal role at sentencing, if he had been convicted of an offense involving the lesser quantity of drugs. On the other hand, there is nothing in the record to indicate that there was a realistic fear of being sentenced to anything more than the ten-year mandatory minimum if he went to trial and was found guilty on all counts. Given the record of this case, the ten-year mandatory minimum sentence was quite likely the lengthiest sentence he would have received under any circumstances. I find that "there is a reasonable probability that, but for counsel's errors, [Umanzor] would not have pleaded guilty and would have insisted on going to trial." *Matthews*, 114 F.3d at 114, (8th Cir. 1997) (citing *Hill*, 474 U.S. at 59, and *Prior*, 107 F.3d at 661).

Umanzor has established both that his attorney provided deficient performance and that he was prejudiced by that deficient performance. Therefore, he is entitled to relief on this § 2255 claim, consisting of setting aside his guilty plea and granting him a new trial.

### 3. *Failure to move to withdraw guilty plea*

Umanzor argues that his trial counsel was also ineffective for failing to move to withdraw his plea of guilty after "he found out that [Umanzor] had handled less drugs than he had pleaded guilty to." Motion at 4. Respondent essentially argues that Umanzor relied on the strategic advice of his counsel to argue about drug quantity at sentencing rather than to withdraw his plea of guilty, and that this advice was merely unwise and not deficient. Response at 11.

"A defendant may withdraw a guilty plea that has been accepted by a court, before sentence is imposed, if 'the defendant can show a fair and just reason for requesting the withdrawal.'" *United States v. Cruz*, 643 F.3d 639, 641-42 (8th Cir. 2011) (quoting FED. R. CRIM. P. 11(d)(2)(B)). "The defendant bears the burden to establish fair and just grounds for withdrawal." *Id.* (citing *United States v. Rollins*, 552 F.3d 739, 741 (8th Cir.

2009). "'Defense counsel's performance can serve as the requisite 'fair and just reason' for withdrawal only if [the defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it.'" *Id.* (quoting *United States v. McMullen*, 86 F.3d 135, 137 (8th Cir. 1996)). "A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options." *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981). This is so, even in cases where a defendant indicates during a plea colloquy that he was making a voluntary, knowing, and intelligent guilty plea, if the evidence in the record directly contradicts such a statement. *See Gonzales v. Grammar*, 848 F.2d 894, 900 (8th Cir. 1988).

For the reasons stated above, I believe that the advice that Umanzor received regarding what he could argue at sentencing was more than merely unwise and, as such, the failure to move to withdraw Umanzor's guilty plea cannot be considered a reasonable strategic decision on the part of trial counsel. The record clearly contradicted Umanzor's admission that the quantity of drugs involved in the controlled buys met or exceeded 50 grams and arguably contradicted his statement that he assisted with the distribution of more than 50 grams. Further, Umanzor's decision to plead guilty was based on his reliance on counsel who performed ineffectively in advising him regarding the consequences of entering a plea of guilty by telling him that he would be able to challenge the drug quantity at sentencing. Umanzor had overwhelmingly persuasive arguments for withdrawal of his guilty plea, and for the same reasons discussed above, there is a reasonable probability that Umanzor would have chosen to withdraw his guilty plea and proceed to trial. I find that Umanzor was prejudiced by the failure of his trial counsel to timely move to withdraw his

plea because there is a reasonable probability that, but for his counsel's erroneous advice, Umanzor would have moved to withdraw his guilty plea.

Again, Umanzor is entitled to § 2255 relief on this claim of ineffective assistance of counsel, and the appropriate relief is to set aside his guilty plea and grant him a new trial.

### 4. *Ineffectiveness on appeal*

Umanzor claims that his attorney provided ineffective assistance on appeal by raising one issue that was procedurally barred and another issue that had been rejected at sentencing and foreclosed by circuit precedent. Brief at 16. Umanzor argues that his attorney should have known that he could not raise the issue of the voluntariness of his guilty plea if it hadn't been raised below by moving to withdraw his plea. Brief at 17. Further, Umanzor asserts that it was frivolous to argue on appeal that he should have been allowed to argue for a lesser drug quantity at sentencing than he had pleaded guilty to, in light of *United States v. Campos*, 362 F.3d 1013, 1015-16 (8th Cir. 2004), upon which the Eighth Circuit Court of Appeals relied in rejecting his claims on direct appeal, *see Umanzor*, 617 F.3d at 1062-63. Brief at 18-19. Umanzor claims that he was prejudiced, because if his appellate counsel had not raised these frivolous arguments on appeal, Umanzor would have been able to argue ineffective assistance of counsel directly to the court of appeals because the record in this case was sufficiently developed for direct review. Brief at 18-19.

Without determining whether Umanzor's counsel provided ineffective assistance on appeal, I find that Umanzor was not prejudiced by his attorney's performance on appeal because Umanzor cannot demonstrate that there is a reasonable probability that the outcome of his appeal would have been different. Umanzor argues that the only viable argument he would have had on appeal was ineffective assistance of counsel. Brief at 18-

19.  The Eighth Circuit Court of Appeals has made it clear that "[w]e will not hear ineffective assistance claims on direct appeal unless the record is fully developed and our failure to act would be a 'plain miscarriage of justice' or the counsel's errors are 'readily apparent.'"  *United States v. Rodriguez-Ramos*, ___ F.3d ___, ___, 2011 WL 6113964, *6 (8th Cir. Dec. 9, 2011) (citing *United States v. Orr*, 636 F.3d 944, 950 (8th Cir. 2011), and *United States v. Ramirez-Hernandez*, 449 F.3d 824, 827 (8th Cir. 2006)).  The Eighth Circuit Court of Appeals, while not having the issue raised or argued directly before it, stated that "[g]iven the record and the procedural posture of the present case, any claim that Umanzor's plea is constitutionally flawed will need to be addressed through 28 U.S.C. § 2255 proceedings."  *United States v. Umanzor*, 617 F.3d 1053, 1060 (8th Cir. 2010).  Umanzor is now before this court arguing that his plea of guilty was unconstitutional because he received ineffective assistance of counsel.  Thus, he is in exactly the same position that he would have been in, if his attorney had attempted to argue ineffective assistance of counsel on direct appeal.

Because Umanzor has not established that he was prejudiced by his appellate counsel's conduct, I do not need to address the performance prong of the *Strickland* analysis.  *See Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).").

Umanzor's claim that the performance of his counsel on appeal was ineffective, fails.

### III. CONCLUSION

This is an extraordinary case, both in that relief must be granted and in that the existing record establishes two of the petitioner's claims for relief so conclusively that no evidentiary hearing is required. Upon the foregoing, petitioner Soyner Umanzor's March 17, 2011, *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody and Memorandum Brief (Civ. docket no. 1) is **granted in part** and **denied in part**, as follows:

1.      Umanzor's claim of ineffective assistance of counsel in advising him to plead guilty to the charged quantity of actual methamphetamine is **granted**. Umanzor's conviction is **vacated**, and he is entitled to a new trial on the charges against him.

2.      Umanzor's claim of ineffective assistance of counsel for failing to move to withdraw his plea of guilty after counsel found out that Umanzor had handled less drugs than he had pleaded guilty to is also **granted**. Umanzor's conviction is **vacated**, and he is entitled to a new trial on the charges against him.

3.      Umanzor's claim of ineffective assistance of appellate counsel is **denied**.

**A new trial shall be set by separate order**.

**IT IS SO ORDERED.**

**DATED** this 17th day of January, 2012.

Mark W. Bennett

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA